COPY

STATE OF NEW YORK
SUPREME COURT                    COUNTY OF JEFFERSON

GLENN FEDERMAN,

Plaintiff,

-against-

**AMENDED
VERIFIED
COMPLAINT
JURY DEMAND**

Index No: 2021-2391

TOWN OF LORRAINE;
Highway Superintendent Joseph Wasilewski
Town Attorney David Geurtsen Esq

SOUTH JEFFERSON CENTRAL SCHOOL DISTRICT

Board of Education, School Superintendent Scott Slater,
Transportation Administrator Ms. Rebecca Dalrymple

Eric J. Soules 17495 Miller Rd Adams, NY 13605
Steven J. Overton 17621 Miller Rd Adams, NY 13605
Steven Eastman 7979 US Route 11 Adams, NY 13605

Jefferson County Clerk
Entered/Filed/Received/Recorded

FEB 1 2023
@ 11.30

Defendant's.

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff, Glenn Federman, respectfully shows and alleges as follows:

## PARTIES

1. The plaintiff herein, Glenn Federman, is a resident of the State of New York. Mr. Federman resides at 17254 Miller Rd, Adams, New York.

2. Defendants herein: Highway Superintendent Joseph Wasilewski, Town Attorney David Geurtsen Esq of the Town of Lorraine, which is a municipality located at 20876 County Rte 189, Lorraine, NY.

3. The defendants herein: Board of Education, School Superintendent Scott Slater, Transportation Administrator Ms. Rebecca Dalrymple of the South Jefferson Central School District (SJCSD), which is a public school district located at 11060 US Route 11 Adams Center, NY.

4. Defendants South Jefferson Central School District, Board of Education, School Superintendent Scott Slater, Transportation Administrator Ms. Rebecca Dalrymple (hereinafter, collectively referred to as "District Defendants")

5. Defendant herein, Eric J. Soules is a resident of the State of New York. Mr. Soules resides at 17495 Miller Rd Adams, NY.

6. Defendant herein, Steven J. Overton is a resident of the State of New York. Mr. Overton resides at 17621 Miller Rd Adams, NY.

7. Defendant herein, Steven Eastman is a resident of the State of New York. Mr. Eastman resides at 7979 US Route 11 Adams, NY.

8. Defendant Eric Soules, Steven Overton and Steven Eastman (hereinafter, collectively referred to as "Miller Road Defendants").

## FACTUAL ALLEGATIONS

9. Town Defendants, District Defendants and Miller Rd Defendants have been in cahoots for a long time to ensure that the unpaved poorly maintained deteriorated 0.25 mile section of road that leads to Plaintiff's residence always remains in that condition to cause harm to Plaintiff;

10. Town Defendants, District Defendants and Miller Rd Defendants conspired together to weaponize the two tier neighborhood road that they had created;

11. Town Defendants, District Defendants and Miller Rd Defendants used the unpaved poorly maintained deteriorated 0.25 mile section of Miller Rd to deliberately harass, trespass, cause property damage, cause physical, emotional, financial injury, deprivation of civil rights, worsening of existing health issues, intentional infliction of emotional distress to Plaintiff;

12. The two tier neighborhood road was created by having a top tier 0.40 mile well maintained paved section;

13. The 0.40 mile paved section benefited the Miller Rd Defendants, two of whom have houses along side the paved section with the third Miller Rd Defendant owns/farms numerous acres of land on Miller Rd;

14. Since 1984 Plaintiff had resided at the end of the unpaved poorly maintained deteriorated 0.25 mile road section, adjacent to the Town Line which marks the end of the 0.65 mile road;

15. Defendant Highway Superintendent Wasilewski took office on 1/1/2018;

16. Defendant Highway Superintendent Wasilewski never erected any road length and width boundary monument markers on Miller Rd;

17. The 0.65 mile long Miller Rd was never established by town board resolution as a municipal owned public access road;

18. The 0.65 mile long Miller Rd does not have a road survey done by a NYS licensed surveyor;

19. Defendant Highway Superintendent Wasilewski does not have a written short or long term compressive road maintenance plan which was recommended by the Tug Hill Commission;

20. Since 1960 the unpaved deteriorated 0.25 mile section never had any type of permanent road improvement done;

21. In 2018 a Highway Reconstruction with a service life of >10 years was supposed to have been done by Defendant Highway Superintendent Wasilewski on the deteriorated 0.25 mile lower tier road section;

22. Defendant Highway Superintendent Wasilewski had received $7,749.47 reimbursement from CHIPS EWR fund for completion of the Highway Reconstruction which was never done;

23. The Highway Reconstruction was deliberately never started nor completed by Defendant Highway Superintendent Wasilewski;

24. Defendant Highway Superintendent Wasilewski lied about the completion on the CHIPS EWR reimbursement form to obtain the $7,749.47;

25. Defendant Highway Superintendent Wasilewski's deliberate failure to complete the Highway Reconstruction ensured that the deteriorated 0.25 mile lower tier section road still existed;

26. Defendant Highway Superintendent Wasilewski's deliberate failure to complete the Highway Reconstruction was done to ensure that the Town Defendants, District Defendants and Miller Rd Defendants would still be able to use the unpaved section of Miller Rd to deliberately harass, trespass, cause property damage, cause physical, emotional, financial injury, deprivation of civil rights, worsening of existing health issues, intentional infliction of emotional distress to Plaintiff;

27. If Defendant Highway Superintendent Wasilewski had not lied and actually done the Highway Reconstruction on the 0.25 mile section with a service life of >10 years, then there would not have been a two tier neighborhood road, Plaintiff would not have suffered injury and a lawsuit would not have been filed in May 2019;

28. However that was not the case and as a direct and proximate result of Defendant Highway Superintendent Wasilewski's deliberate failure to do the work as stated above, Plaintiff suffered substantial injury and substantial money damages.

29. Defendant Highway Superintendent Wasilewski lied in Defendant's Summary Judgement/Dismiss pleading (Index No 2019-1146) Affidavit about work he supposedly did on the final 0.05 mile section ending at the Town Line;

30. Which was impossible to do since the final 0.05 mile section had not been used in any manner by the Town for more than 20 years;

31. Which was clearly shown in the Defendant's Summary Judgement/Dismiss pleadings (Index No 2019-1146) Defendant Exhibit photos;

32. As shown on the 2018 Annual Certification of Highway Mileage the end of the road 0.05 mile section was never abandoned by Defendant Highway Superintendent Wasilewski but Wasilewski still claimed CHIPS reimbursement for maintenance on that section;

33. Since 2018 the two tier road has been diligently maintained by Town Defendants;

34. To ensure that there is a clear visual and physical distinction ;

35. To harass and cause injury to Plaintiff as previously stated;

36. In violation of Plaintiff's Federal and State civil rights, Defendants instituted a "Neighborhood Watch" to monitor and stalk Plaintiff and anyone who came down the road to Plaintiff's property or anywhere else;

37. On or about October 9, 2021, one or more Defendants placed a large cardboard sign alongside the road in on Mr Overton's property with the words "Like a Good Neighbor" for Plaintiff to clearly see as he drove passed on the way to his residence;[Exhibit A]


## TRESPASS

38. District Defendants failed to follow district procedure to obtain homeowner permission prior to using the plaintiff's private property as a turnaround.

39. District Defendants never received Plaintiff's permission prior to using the his private property as a turnaround;

40. Despite not receiving Plaintiff's permission, District Defendants buses entered Plaintiff's private property with the intent to use it as a turnaround;

41. District Defendants buses used Plaintiff's property as a turnaround continuously for more than a year;

42. The only residence with school aged children at this time who rode the bus was located at the beginning of Miller Rd;

43. There were multiple available places to turnaround directly off the paved section of road, including backing up in the driveway of the house on Miller Rd when the student was pick up/dropped off;

44. Many times the bus drivers used these places to turn around on their own volition instead of driving the ½ mile down the deteriorated road and then the ½ mile back;

45. The District Defendants have a Duty to provide student safety on buses;

46. The bus drivers were forced byTown Defendants, District Defendants and Miller Rd Defendants to drive the bus filled with students ½ mile down down the poorly maintained deteriorated road riddled with loose stones, and potholes, which received no wintertime sand or salt as is done on the paved section then drive ½ mile back just to turn around on Paintiff's private property; [Exhibit B]

47. There was no winter time sand and salt put down on the unpaved section of Miller Rd due to Defendant Highway Superintendent Wasilewski insistence that "it is a dirt road" and "there was never any sand or salt on it" and "sand and salt makes it soft";

48. Town Defendant's refusal to extend the paved section ≈ 500ft to the turnaround and provide the same equitable road maintenance and road improvement as is done on the 0.40 mile paved road surface is a safety issue/concern for the District defendants;

49. District Defendants have a duty of care to protect the students riding the bus;

50. Town Defendants, District Defendants and Miller Rd Defendants forced bus drivers to drive the bus with students on an unsafe deteriorated road riddled with loose stones and potholes, with no sand or salt application in the winter to turn around on Plaintiff's private property;

51. District Defendants breached their duty of care when they forced the bus drivers to drive more than ½ mile down the unpaved, deteriorated road riddled with loose stones , with no sand or salt application in the winter, to turn the buses around on Plaintiff's private property;

52. For years the buses turned around in Rick Soules driveway when his children rode the bus;

53. For years the buses turned around in Steven Overton's driveway before he started working for the SJCSD;

54. For years the buses turned around using the decades old south field access, in Steven Eastman's field adjacent to Plaintiff's property, which has since turned into a non dedicated, non municipal owned turnaround at the same place where the old south field access was located with the addition of approx 50 ft x 20 ft section on the north side of Miller Rd;

55. However, the turnaround which was constructed in August 2021 was never dedicated, nor given a quick deed nor was it entered in the Annual Certification for Highway Mileage with full description, photos etc, so it essentially remains a quid pro quo gift;

56. As such, it is presently a very large area of packed down gravel/stone on Eastman's Property with no dedication for municipal ownership;

57. As such the turnaround is temporary since it can effectively be removed at any time by the landowner;

58. The 0.40 mile paved section appeared to have been done as a quid pro quo gift to benefit 3 families;

59. It appears Town Defendants are attempting to circumvent NY Highway Law with regard to Miller Rd;

60. Town Defendants, District Defendants and Miller Rd Defendants forced the bus drivers to trespass on Plaintiff's property;

61. Town Defendants, District Defendants and Miller Rd Defendants (one of whom was a SJCSD employee with children riding the bus) disregarded student safety on a daily basis and chose to continue to harass and cause continued financial, physical and emotional injury to Plaintiff;

62. Town Defendants, District Defendants and Miller Rd Defendants deliberately subjected the students and bus drivers to harm and injury when they forced the drivers to turn the buses around on Plaintiff's private property;

63. The Town Defendants disregard for child safety and bus driver safety was exhibited by their adamant refused to extend the 0.40 mile paved road surface approximately 500 ft to create a smooth even road surface which would receive proper wintertime maintenance;

64. The acceptance by the Board of Education of District Defendant's behavior reflects their own disregard for student safety or bus driver safety;

65. Town Defendants, District Defendants, Miller Rd Defendants all put the safety of the children and bus drivers as risk to satisfy their continuous desire to cause injury to Plaintiff in their constant attempt to force him out;

66. These actions of Town Defendants, District Defendants are in conflict with values and obligation pursuant to the Professional License holders;

67. On or about September 23, 2020, Plaintiff called SJCSD Transportation Administrator Ms. Rebecca Dalrymple, and requested for the SJCSD School Bus #190 to stop using Plaintiff's driveway and private property on Miller Rd to turn the bus around without Plaintiffs permission.

68. Ms. Dalrymple stated that since permission is normally obtained from the homeowner prior to the use of a private driveway and property as a bus turnaround, she would "look into" why this had not already been obtained, and would call the Plaintiff back.

69. On or about 10/1/2020, Ms. Dalrymple called Plaintiff and stated her "investigation" regarding Plaintiff's request involved conversation with unidentified Police and Lorraine Town Officials who said they used a tax map as proof of municipal road ownership and public turnaround.

70. Ms. Dalrymple refused to provide Plaintiff with names of Police and Lorraine Town Officials who provided misinformation used in her investigation to deny Plaintiff's request.

71. Plaintiff told Ms. Dalrymple that the tax map was not a legal document property line determination or to show municipal ownership. Ms. Dalrymple told the Plaintiff that Police informed her they always use a tax map.

72. Ms. Dalrymple told Plaintiff that the map was "proof" that the portion of the road with turnaround was public and based on that information, the SJCSD buses would continue to use Plaintiff's driveway and private property to turn around.

73. Plaintiff questioned Ms. Dalrymple as to the reason why School Bus #190 drives more than 0.50 mile down the partially paved road just to turn around in Plaintiff's driveway / private property.

only to drive back an extra 0.50 mile back up the abutment with Baker Rd, instead of using one of the other driveways or farm vehicle turnoff;

74. There is a farm vehicle turnoff located next to the driveway of the Overton home where the only school age children who ride the bus on Miller Rd reside.

75. The Overton home and driveway is located on the paved section of Miller Rd, around 500ft from the abutment of Miller Rd and Baker Rd and more than 0.50 mile from Plaintiff's driveway / private property.

76. Ms. Dalrymple refused to respond to Plaintiff's question but told Plaintiff that she "understood" (without elaborating) that there was a road issue currently in court which was "basically resolved";

77. Ms. Dalrymple stated if the court makes changes to the road then the buses would stop using Plaintiff's driveway and property to turn their bus around;

78. Plaintiff responded that something else now needed to be done and immediately Ms. Dalrymple challenged Plaintiff and angrily stated "What does that supposed to mean? "What are you going to do about it"?

79. Plaintiff responded that it would involve the Court

80. The anger and hostility exhibited by Ms. Dalrymple toward Plaintiff was unwarranted, unprofessional behavior;

81. The 10/01/2020 phone conversation concluded with Plaintiff requesting that Ms. Dalrymple put everything she told Plaintiff regarding her "investigation" in writing and signed by SJCSD Superintendent Scott Slater.

82. Ms. Dalrymple agreed to write a letter and mail it out in a few days, which did not occur.

83. Over the course of the next two weeks, Plaintiff made several calls to inquire about the letter status but was not provided any information outside of being told that Ms. Dalrymple was unavailable.

84. On or about October 10, 2020, Plaintiff attempted to obtain additional verification about Plaintiff's "Private Road";

85. On or about October 10, 2020, Plaintiff called the Town of Lorraine Highway Superintendent Wasilewski at the Municipal Building and requested him to come down and mark the boundary line between the municipal road and private road.

86. Highway Superintendent Wasilewski angrily refused to come down and mark the boundary line between the municipal road and private road and stated "if you have a problem with what I do, tell my attorney";

87. Defendant Highway Superintendent Wasilewski failed to erect highway length and width boundary monuments on Miller Road, most notably on the section of road on Plaintiff's property which is a focal point for trespass in this dispute;

88. Town Defendant's refusal and inability to clarify municipal ownership of the road and boundary line on the section of Miller Rd on Plaintiff's property further supports Plaintiff's claim of non municipal ownership and served as additional validation as Plaintiff's "Private Road ".

89. On or about October 18, 2020, Plaintiff received Ms. Dalrymple's followup letter which contained the following information: "This letter is a follow up to our phone conversation to inform you that upon researching the location of the turnaround on Miller Road in Lorraine, NY, it appears that it is located on public property. Therefore, the school district will continue to use the turn around. If you have any questions regarding this matter, please contact Rebecca Dalrymple, Transportation Administrator or Scott Slater, Superintendent of Schools".

90. Accordingly, Ms. Dalrymple lied to Plaintiff since the letter did not include the same or any explanation, about her "investigation" and resulting refusal decision that she had told Plaintiff over the phone on 10/01/2020.

91. As such Ms. Dalrymple's written response letter was devoid of any definitive qualitative data, lacked any names, dates, document information, did not contain any of any substantive information she stated she would provide during the phone conversation.

92. On October 20, 2020, Plaintiff had called Ms. Dalrymple to obtain an verbal explanation as to why her letter did not accurately reflect the phone conversations regarding the use of the tax map to determine municipal ownership of the road, that the turnaround was public and to find out the names of law enforcement and town officials who she spoke to.

93. Ms. Dalrymple shunned Plaintiff and refused to speak, let alone explain, clarify or discuss her letter or reason for her allegedly discriminatory actions toward Plaintiff.

94. A followup letter sent by Plaintiff directly to Ms. Dalrymple and directly to Mr. Slater, included a statement that a Notice of Claim would be filed.

95. No response by either person was sent to the Plaintiff

96. Plaintiff's counsel David Antonucci sent requests to Scott Slater and Town litigation attorney Michael Crowe to stop the school bus from turning around on plaintiff's private property and to stop spreading sand on Plaintiffs private property to create a turnaround on Plaintiff's private property.[Exhibit C]

97. , Defendant SJCSD refused to acquiesce and continued to trespass without hesitation through the 2020-2021 school year.

98. Transportation Administrator Ms. Dalrymple's denial  and subsequent actions were part of conspiracy by District Defendants, Town Defendants, Miller Rd Defendants, and others, intended to harass, deprive Plaintiff of his civil rights, trespass, property damage done with immunity and impunity, worsen Plaintiff's health condition, intentional infliction of emotional distress, physical, emotional, and financial injury to Plaintiff;

## ILLEGAL USE OF THE TAX MAP FOR ROAD AND PROPERTY BOUNDARY DETERMINATIONS

99. The Jefferson County Real Property Tax Dept person who worked on the represented road drawing for 2014 Tax map revision stated he "changed the angle", but not the actual length, of the end of the road on the tax map which precipitated the associated dimensionless GIS image to show a huge round turnaround to benefit the Town Defendants, District Defendants and Miller Rd Defendants with the appearance of a wider road section as stated above;

100.  The tax map is not a legal document to be used for determination of road and property boundaries;

101.  Town Defendants, District Defendants, Miller Rd Defendants all used it as a legal document;

102.  The revised tax assessment map failed to show the 0.05 mile section of Miller Road which was in Plaintiff's front door view before ending at the Lorrain/Ellisburg Town line.

103.  Plaintiff was the only targeted resident  negatively affected by the tax map revision since the "road angle change" was on Plaintiff's property ;

104.  The tax assessment map was weaponized byTown Defendants, District Defendants and Miller Rd Defendants for use as the basis document;

105.  To change road boundary length & width;

106.  To change  Plaintiff's property/road boundaries;

107.  To cause injury to Plaintiff;

108.  Upon information and belief, Town Defendants, District Defendants and Miller Rd Defendants were involved with initiating  the tax revision for their benefit  and its aftermath;

109.    Upon information and belief, weaponization of a tax map revision from the Jefferson County Real Property Tax Dept was done, at the behest of the Town Defendants with input from Miller Rd Defendants and other landowners on Miller Rd;

110.    Jefferson County Real Property Tax Dept made the change the angle of the road on Plaintiff's property;

111.    The GIS system created a dimensionless fake huge round turnaround image on Plaintiff's property which the Town Defendants, District Defendants, Miller Rd Defendants and others could interpret as legitimate and real;

112.    In or around Sept 2020, weaponized tax assessment map was used by Town Defendants, District Defendants and Miller Rd Defendants, law enforcement and others to justify trespass on Plaintiff's property;

113.    It was also used by Town Defendants, District Defendants and Miller Rd Defendants, to force the school bus drivers to continuously drive ½ mile down the road to turnaround on Plaintiff's property in order to harass, intimidate and cause financial, physical and emotional injury to Plaintiff;

114.    As stated above, the weaponized tax assessment map was used to falsely give the illusion on paper, and with the dimensionless GIS system that there was a huge turnaround on Plaintiff's property;

115.    Despite Plaintiff and Plaintiff's counsel multiple requests to the SJCSD Transportation Administrator Ms. Rebecca Dalrymple to stop the school bus from turning around on plaintiff's private property, Defendant SJCSD refused to acquiesce and continued to trespass without hesitation through the 2020-2021 school year.

116.    Highway Superintendent did not document the new turnaround constructed at the ≈ 0.45 mile point on Mr Eastman's on the NYSDOT Annual Certification of Local Highway Mileage;

117.    Accordingly the GIS system did not show the turnaround;

118.    Which meant that anyone using a GPS would not know that the turnaround exists;

119.    Miller Rd Defendants supported the school buses driving the extra ½ mile each way to turn around on Plaintiff's property instead of their own property, even though the buses used to do that;

120.    Town Defendants, District Defendants and Miller Rd Defendants were in cahoots to trick/force Plaintiff into signing off on accepting settlement agreement for voluntary abandonment pursuant HAY§207 without Plaintiff knowing the actual initial proposed turnaround location (which was going to be located at the top of the hill) to enable the unpaved section after the 0.40 mile pt to be abandoned which would legally separate Plaintiff and his property from the the community and the road to Plaintiff's home would no longer be maintained;

121.    This scheme represented an egregious violation of human rights, which was uncovered by plaintiff who refused to sign off;

122.    After the scheme was uncovered, Town Defendants immediately changed the secret proposed turnaround location from the top of the hill (using a portion of Mr Eastman's property) to the bottom of the hill, using a portion of Mr Eastman's property with his approval;

123.    Miller Rd Defendants were involved and complicit;

124.    In or around August 2021, Town Defendants hastily constructed a turnaround consisting of large stone in an attempt to get Plaintiff to still sign off on the HAY§207 abandonment;

125.    Town Defendants chose not to document the newly constructed turnaround in the 2021 Annual Certification of Highway Mileage;

126.    Town Defendants refused to extend the paved 0.40 mile section ≈ 500ft to the turnaround;

127.    Highway Superintendent denied Plaintiff the same permanent paved road improvement that the other 3 residences on the paved 0.40 mile section previously received;

## FIRST CAUSE OF ACTION

**Breach of Duty of Care of Road Obligation** in violation of

New York Highway Law ("HAY") §140 General Powers and Duties

of Town Superintendent

128.    Defendant Highway Superintendent has a statutory duty of care of road obligation which includes: providing road maintenance, road improvement, applying sand / salt to reduce icy road surface conditions, erecting highway length and width boundary monuments;

129.    Pursuant to HAY§140.11 Defendant Highway Superintendent failed to erect road length and width boundary monument markers;

130.    Based on the stated factual allegations Town Defendants failed to meet their duty of care of road obligation;

131.    The breach of duty of care of road obligation caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

132.    As a direct and proximate result of the above-mentioned acts, Plaintiff has suffered injuries and damages.

133.    Defendant 's malicious actions have negatively affected plaintiff's health and well being, causing financial injury along with substantial pain and suffering.

134.    As a direct and proximate result, the Plaintiff suffered substantial money damages.

## SECOND CAUSE OF ACTION

**Trespass to Land** in violation of

NY Penal Law§140.05

135.    District Defendants knowingly entered Plaintiff's private property multiple times with school buses with the intent to use Plaintiff's private property as a turnaround for school district buses during the 2020-2021 academic year;

136.    Based on the stated factual allegations District Defendants knowingly used school buses to trespass on Plaintiff's private property for use as a turnaround for school district buses during the 2020-2021 academic year;

137.    The trespass by District Defendants caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

138.    The year long trespass caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

139.    As a direct and proximate result of the above-mentioned acts, Plaintiff has suffered injuries and damages.

140.    Defendant's actions have negatively affected plaintiff's health and well being, causing financial injury along with substantial pain and suffering.

141.    As a direct and proximate result, the Plaintiff suffered substantial money damages.


### THIRD CAUSE OF ACTION

#### Intentional Infliction of Emotional Distress in violation of

#### New York Executive Law § 290 and New York State Constitution §11

Pursuant to New York Executive Law § 290: the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life.

Pursuant to New York State Constitution §11: No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state [...].

142.    That Defendants who, by the nature of superiority as a public official;

143.    Owed a greater duty to Plaintiff due to their elected position;

144.    Such that their repeated actions over a long period of time toward Plaintiff were done with Intentional Infliction of Emotional Distress;

145.    With a common goal to force Plaintiff to move out from his residence;

146.    Such that it would deprive Plaintiff of the right for equal opportunity to enjoy a full and productive life.

147.    Based on the stated factual allegations Defendant's actions toward Plaintiff caused Intentional Infliction of Emotional Distress,

148.    The Emotional Distress Intended Infliction caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

149.    The discrimination caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

150.    As a direct and proximate result of the above-mentioned acts, Plaintiff has suffered injuries and damages.

151.    Defendant's actions have negatively affected plaintiff's health and well being, causing financial injury along with substantial pain and suffering.

152.    As a direct and proximate result, the Plaintiff suffered substantial money damages.

## FOURTH CAUSE OF ACTION

### Civil Conspiracy to Discriminate in violation of

### New York Executive Law § 290 and New York State Constitution §11

New York State Constitution §11; No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

Pursuant to New York Executive Law § 290: the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life.

By reason of the conduct alleged above, Defendants were in cahoots and engaged in discrimination in connection with in violation of New York Executive Law § 290 and New York State Constitution §11.

153.    Based on the stated factual allegations Town Defendants, District Defendants and Miller Rd Defendants were in cahoots and conspired to discriminated against Plaintiff;

154.    The conspiracy to discriminate caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

155.    The discrimination caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

156.   As a direct and proximate result of the above-mentioned acts, Plaintiff has suffered injuries and damages.

157.   Defendant 's actions have negatively affected plaintiff's health and well being, causing financial injury along with substantial pain and suffering.

158.   As a direct and proximate result, the Plaintiff suffered substantial money damages.

## FIFTH CAUSE OF ACTION

### Discrimination under the Equal Protection Clause of the

### U.S. Constitution in violation of 42 U.S.C. § 1983

159.   Defendant Town and  District Defendant acted under color of state law to deprive the Plaintiff of his Fourteenth Amendment rights. A cause of action is created by 42 U.S.C. § 1983..

160.   Based on the stated factual allegations Town Defendants, District Defendants Defendants were in cahoots discriminated against Plaintiff;

161.   The discrimination  caused Plaintiff exacerbation of ADA disability health issues, worsening of medical condition and financial injury to Plaintiff.

162.   As a direct and proximate result of the above-mentioned acts, Plaintiff has suffered injuries and damages.

163.   Defendant 's actions have negatively affected plaintiff's health and well being, causing financial injury along with substantial pain and suffering.

164.   As a direct and proximate result, the Plaintiff suffered substantial money damages.

## SIXTH CAUSE OF ACTION

### Egregious Abuse of Human Rights in violation of

### New York State Constitution §11 and New York Executive Law § 290

New York State Constitution §11; No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any

discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

New York State Constitution §11 provides: No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

New York Executive Law § 290 provides: the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life.

165.    Based on the stated factual allegations Town Defendants, District Defendants, Miller Rd Defendants actions and treatment toward Plaintiff were an Egregious Abuse of Human Rights;

166.    As a direct and proximate result of the above-mentioned acts, Plaintiff has suffered injuries and damages.

167.    Defendant 's malicious actions have negatively affected plaintiff's health and well being, causing financial injury along with substantial pain and suffering.

168.    As a direct and proximate result, the Plaintiff suffered substantial money damages.


## SIXTH CAUSE OF ACTION

### Negligence

Based on Breach of Duty of Care of Road Obligation
in violation of New York Highway Law HAY§140 and
General Powers and Duties of Town Superintendent

169.    Based on the stated factual allegations Town Defendant Highway Superintendent was negligent and failed to meet his duty of care of road obligation to Plaintiff;

170.    Plaintiff was injured due to the Negligence of Defendant Highway Superintendent Joseph Wasilewski whose deliberate lies and deliberate failure to have done the Highway Reconstruction on the 0.25 mile section with a service life of >10 years;

171.    Any reasonable person would done the work that they claimed they did and received CHIPS EWR funds for;

172.    Any reasonable person would not have deliberately cause such intense and continuous injury to another person;

173.    If the Highway Reconstruction was actually done there would not have been a two tier neighborhood road;

174.    Plaintiff would not have suffered 4 years of continuous injury and a lawsuit would not have been filed in May 2019;

175.    As stated in the factual allegations, that was not the case and as a direct and proximate result of Defendant Highway Superintendent Wasilewski's negligence and deliberate failure to do the work as stated above, Plaintiff suffered substantial injury and substantial money damages.

176.    Town Defendant's actions have negatively affected plaintiff's health and well being, causing substantial financial injury along with substantial pain and suffering.

177.    As a direct and proximate result, the Plaintiff suffered substantial money damages.

178.

## SEVENTH CAUSE OF ACTION

### Professional Misconduct

### Based on New York State Education EDN§6530

179.    Based on the stated factual allegations District Defendants, Town Defendants with a NYS Professional License practiced the profession with gross negligence on a particular occasion.

180.    Based on the stated factual allegations, Town Defendants and District Defendants with a Professional License engaged in several harmful misconduct activities with negative actions towards Plaintiff.

181.    The deliberate actions include:

182.    Their disregard for the Duty of Care for students riding in a school bus;

183.    Their disregard for engaging in targeted bigoted discrimination toward Plaintiff;

184.    Their illegal use of a tax map to deliberately cause harm;;

185.    Defendant's actions have negatively affected plaintiff's health and well being, causing substantial financial injury along with substantial pain and suffering.

186.    As a direct and proximate result, the Plaintiff suffered substantial money damages.

187.    By reason of the facts and circumstances stated above, the Plaintiff has been damaged by defendants in the sum in excess of $25,000 00

WHEREFORE, plaintiff demands judgment against defendants in the sum in excess of $25,000 pulse legal fees, together with any other relief the Court finds to be just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that a judgment and order be issued:

A) Direct defendant to pay plaintiff the sum in excess of $25,000 plus legal fees,

B) Direct Defendant Town  to extend the current paved road section on Miller Rd approximately 500 ft up to and including the turnaround,

C) Along with any other relief the Court finds to be just and proper  for damage and injury to property and person, physical and emotional, visual and non-visual as a direct result from Defendants actions

D) Along with such other and further relief as the Court may deem reasonable and just under the circumstances;

Dated: January 31, 2023

Glenn Federman Plaintiff Pro Se
17254 Miller Rd
Adams, New York 13605
315- 586-3382

VERIFICATION

Glenn Federman, being duly sworn, deposes and says: I am the Plaintiff in the above-entitled

action. I have read the foregoing complaint and know the contents thereof The same are true to

my knowledge, except as to matters therein stated to be alleged on information and belief and as

to those matters I believe them to be true.

Dated: January 31, 2023

Glenn Federman Plaintiff Pro Se
17254 Miller Rd
Adams, New York 13605
315-586-3382

# EXHIBITS



PLAINTIFF'S
EXHIBIT

A







PLAINTIFF'S
EXHIBIT
B

PLAINTIFF'S
EXHIBIT

21.19571° N, 72.8084° 1

28/10/2020 05:13 PM





PLAINTIFF'S
EXHIBIT

B 3



PLAINTIFF'S
EXHIBIT
B4









PLAINTIFF'S
EXHIBIT





PLAINTIFF'S
EXHIBIT

B7



# ANTONUCCI LAW FIRM LLP
### Attorneys & Counselors at Law

DAVID P. ANTONUCCI ESQ.

The Bonadio Building
12 Public Square
Watertown, New York 13601

Tel: (315)788-7300
Fax: (315)788-1643

January 15, 2021

Michael Crowe Esq.
Fitzgerald Morris Baker Firth P.C.
68 Warren Street
Glens Falls, New York 1201-2017

Re:    Glenn Federman: Miller Road, Town of Lorraine

Dear Michael:

As you know, this office is counsel to Glenn Federman. Mr. Federman has requested I contact you regarding the use of his property at the conclusion of Miller Road in the Town of Lorraine by various vehicles of the Town of Lorraine (the "Town"). Any future communications concerning this matter should be addressed to the undersigned.

The Town is now spreading sand at the conclusion of the roadway to create a turnaround for school buses. The same is a further, actionable additional encroachment upon our client's lands. Specifically, the school bus of the School District continues to drive past the end of Miller Road and turn around upon our client's property. No reason exists for the same. Mr. Federman has no school aged children. The continued use of the area will be regarded as a trespass and dealt with accordingly. No public road or easement exists allowing the area to be traversed by the District or the Town. The Town has no right to enter any other portion of the Federman property. Any such prior granted permission is expressly revoked. We have advised the School District of the same and will seek injunctive relief in the pending action. This correspondence constitutes our notice pursuant to 22 NYCRR 202 of our intention to seek such relief.

Failure to respond will be construed as an acknowledgement of the above statements. Also be advised, absent other agreement, our client is prepared to seek injunctive relief to compel the above limitations. In the event of such action, we will seek actual, punitive and compensatory damages for trespass as allowed by law. In such event, we will also seek an order defining the exact and specific boundaries of the driveway as well as what uses are, and are not, allowed as a matter of law.



Page 2
Lorraine

I will await your reply.   If you have any questions or wish to discuss the matter,
please do not hesitate to call.

Very truly Yours,
ANTONUCCI LAW FIRM LLP

David P. Antonucci Esq.

cc:     Glenn Federman

PLAINTIFF'S
EXHIBIT

C 2